# Exhibit A

SUPREME COURT
OF THE STATE OF NEW YORK
COUNTY OF KINGS

| | |
|---|---|
| *Carlton K. Weathers*, ) | Index Number _____ |
|     Plaintiff, ) | |
| ) | *Summons* |
| *v.* ) | |
| ) | Date Index Number Purchased: <u>June 19, 2024</u> |
| *Citibank, N.A.*, ) | |
| *First Premier Bank,* ) | |
| *Experian Information Solutions, Inc.,* ) | |
| *and TransUnion Interactive, Inc.,* ) | |
|     Defendants. ) | |

To the above named Defendants:

CitiBank, N.A.
5800 South Corporate Place
Sioux Falls, SD 57108

First Premier Bank
c/o Registered Agent
601 S. Minnesota Ave.
Sioux Falls, SD 57104

Experian Information Solutions, Inc.
c/o registered agent CT Corp. Sys.
28 Liberty Street, Floor 42
New York, NY 10005

TransUnion Interactive, Inc.
c/o registered agent Corporation Serv.Co.
80 State Street
Albany, NY 12207

    You are hereby summoned to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

    The basis of venue is <u>Civil Practice Law & Rules Section 503(a),</u> which <u>is the county in which one of the parties resided when the action was commenced.</u>

Dated: <u>June 19, 2024</u>

        Paúl Camarena, Esq.
        by: *Paúl Camarena*

        Paúl Camarena
        Paúl Camarena, Esq.,
        540 Court St., No. 4015
        Brooklyn, NY 11231        (312) 493-7494  /  paulcamarena@paulcamarena.com
        NY Atty No: 3991981

IN THE SUPREME COURT
OF THE STATE OF NEW YORK
COUNTY OF KINGS

CARLTON K. WEATHERS,            )
    Plaintiff,              )
                                )
v.                              )
                                )
CITIBANK, N.A.,                 )
FIRST PREMIER BANK,             )
EXPERIAN INFORMATION SOLUTIONS, INC., )
and TRANSUNION INTERACTIVE, INC., )
    Defendants.             )

## COMPLAINT

Plaintiff Carlton Weathers, by his counsel Paúl Camarena, respectfully complains as follows:

### Introduction.

1)   The United States Fair Credit Reporting Act and its progeny provide that, when a consumer disputes information that a furnisher of credit information is reporting to a consumer reporting agency, the furnisher must reasonably investigate that information and the consumer reporting agency must reasonably re-investigate that same information.  In the instant case, Plaintiff Mr. Weathers disputed information reported by Defendant Furnishers CitiBank and First Premier.  However, the Defendant Furnishers failed to reasonably investigate their own reported information, and the Defendant Consumer Reporting Agencies Experian, and TransUnion also failed to reasonably re-investigate that same information.

2)   The Defendant Furnishers' reporting about Mr. Weathers was inaccurate and the Defendant CRAs included that inaccurate information on their reports.  Nevertheless, regardless of whether any Defendant's reporting would have been inaccurate, each Defendant's failure to reasonably investigate or re-investigate was *per se* a violation of the U.S. Fair Credit Reporting

Act. *Spokeo v. Robins*, 578 U.S. 330, 136 S. Ct. 1540, 1550 (2016) ("**A violation** of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate.") (emphasis added) (dismissing FCRA claim because the FCRA violation did not result in any harm or a case or controversy as required by Article III of the U.S. Constitution). Moreover, "the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute." *Asarco v. Kadish*, 490 U.S. 605, 617 (1989).

## Constitutional and Statutory Jurisdiction.

3) The Fair Credit Reporting Act, at 15 U.S.C. §§ 1681n and o, states that "[a]ny person who is negligent in failing to comply" or "who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer." The F.C.R.A., at 15 U.S.C. § 1681p, further states that an "action to enforce any liability created under this subchapter may be brought in any appropriate United States district court … or in any other court of competent jurisdiction."

4) However, the instant complaint may not appropriately be brought in a United States district court because the instant complaint does not allege the particular type of injury required by Article III of the U.S. Constitution. *George v. Credit Corporation*, 22-5512 (E.D.N.Y. August 24, 2023) (holding that, "[b]ecause Plaintiff has not alleged a concrete injury, he lacks Article III standing to sue in federal court, [the United States district c]ourt lacks subject matter jurisdiction … and [the district court] must remand the case" back to a New York State Court) (denying

Plaintiff's motion for attorney fees for litigating remand/removal only because "standing jurisprudence in this District and the Second Circuit [wa]s still evolving" at that time) (citations omitted).

5) Nevertheless, the New York Constitution, Article VI, Section 7a. states that the "supreme court shall have general original jurisdiction in law and equity." Thus, this Honorable Court does have Constitutional and statutory jurisdiction over this action.

### General Personal Jurisdiction.

Authorities.

6) N.Y. Civil Practice Law and Rules Section 301 states that a New York "court may exercise such jurisdiction over persons [ ] as might have been exercised heretofore." "CPLR § 301 has been construed to authorize New York courts to exercise jurisdiction over a foreign corporation if it is 'engaged in a continuous and systematic course of doing business' in New York to warrant a finding of its presence in this jurisdiction. The test for 'doing business' requires that 'the court ... be able to say from the facts that the corporation is present in the State not occasionNational Credit or casuNational Credit, but with a fair measure of permanence and continuity.' In addition to the traditional *indicia* of 'doing business' in New York, such as the existence of **an office, bank account or** other property in New York, jurisdiction over a foreign corporation exists where it **solicits business** in New York and engages in some other continuous activity." *Besler v. Spermon*, 2011 N.Y. Slip Op. 34132 (N.Y. Sup. Ct. 2011) (citing *Allojet PLC v. Vantage Assoc.*, 2005 WL 612848 S.D.N.Y. 2005 ("once solicitation is shown 'very little more is necessary to a conclusion of doing business'") (citation omitted)) (brackets omitted and emphasis added). "Personal jurisdiction over a non resident individual may also be acquired

under CPLR § 301 ... even as to causes of action unrelated to the business done within the State."

*Besler* (citation omitted).

Defendant Experian.

8) Defendant Experian has an office[1] and solicits business in New York[2]. Thus, pursuant to CPLR § 301 and its progeny, this Court has personal jurisdiction over Defendant Experian "even as to causes of action unrelated to the business done within the State." *Besler*.

---

1 Experian publishes an Experian address in New York as "Experian 29 Broadway New York NY 10006" and "Fax: +1 (212) 863-4420 -3201." Experian Data Quality website, available at https://www.edq.com/about-us/#new-york .

2 Experian's website boasts that "Experian provides business credit reports for businesses across New York." Experian website, available at https://www.experian.com/small-business/new-york-business-credit .

Defendant TransUnion.

9) Defendant TransUnion also has "**an office[3], bank account[4]**" and "**solicits business** [all] in New York[5]." Thus, pursuant to CPLR § 301 and its progeny, this Court also has personal jurisdiction over Defendant TransUnion "even as to causes of action unrelated to the business done within the State." *Besler*.

Defendant CitiBank.

9) Defendant CitiBank is headquartered in New York State and has at least 7 offices in Kings County[6]. Thus, this Court also has personal jurisdiction over Defendant CitiBank.

---

3  TransUnion has at least 2 offices in New York, one at "100 Park Ave, 27th Floor, New York, NY" and one at "50 Main Street, Floors 6–8, White Plains, NY." TransUnion website, Global Offices page, available at https://www.transunion.com/about-us/global-locations/north-america .

4  2022 TransUnion Annual Report, pp. 147 – 148 (noting TransUnion accounts with Deutsche Bank AG New York Branch), available at https://investors.transunion.com/~/media/Files/T/Transunion-IR-V2/annual-reports/2022/2022-annual-report.pdf .

5  TransUnion's website notes that "TransUnion [Will] Present at Upcoming Investor Conferences in New York." TransUnion website, Investor Relations page, available at https://newsroom.transunion.com/transunion-to-present-at-upcoming-investor-conferences-in-new-york-and-chicago/ . In addition to the "the traditional *indicia* of 'doing business' in New York," TransUnion trades its corporate stock on the New York Stock Exchange. NYSE: TRU.

6  CitiBank website, Locations page, https://online.citi.com/US/ag/citibank-location-finder .

Defendant First Premier.

11) Defendant First Premier solicits business in New York[7] and, thus, "very little more is necessary to a conclusion of doing business" and personal jurisdiction in New York. *Besler* (citations omitted).

## Venue.

10) CPLR § 503(a) states that a "party resident in more than one county shall be deemed a resident of each such county" and that "the place of trial shall be in the county in which one of the parties resided when it was commenced." In the instant case, Defendant CitiBank resides in New York and in Kings Counties and, thus, this Court is a proper venue for this action.

## Parties.

11) Plaintiff Mr. Weathers is a natural person and, thus, is a "consumer" as that term is defined in the F.C.R.A., at 15 U.S.C. § 1681a(c).

12) Defendant CitiBank is a furnisher of information to a consumer reporting agency and, thus pursuant to 15 U.S.C § 1681s-2(b)(1)(A), Defendant CitiBank is required to "conduct an investigation with respect to the disputed information."

---

[7] "Since at least 1989, First Premier has offered unsecured credit cards to consumers in New York" although "First Premier's solicitations do not alert these consumers to the inherent risks associated with these credit cards." *In the Matter of First Premier Bank*, New York State Attorney General's Office, Consumer Fraud & Protection Bureau, Assurance of Discontinuance (July 23, 2007), available at https://ur.ag.ny.gov/sites/default/files/settlements-agreements/First_Premier_Bank_Settlement.pdf .

23) Defendant First Premier Bank is a furnisher of information to a consumer reporting agency and, thus pursuant to 15 U.S.C § 1681s-2(b)(1)(A), Defendant First Premier is required to "conduct an investigation with respect to the disputed information."

12) Defendant Equifax regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

13) Defendant Experian regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

14) Defendant TransUnion regularly assembles consumer credit information for the purpose of furnishing credit information and, thus, is a "consumer reporting agency" as that term is defined in the FCRA, at 15 U.S.C. § 1681a(f).

## Factual Allegations.

Defendant Furnisher CitiBank and Defendant Consumer Reporting Agency Experian.

40) Several years ago, Mr. Weathers opened a line of credit with CitiBank. Initially, Mr. Weathers made payments, which reduced the line of credit balance. However, later, Mr. Weathers struggled to maintain those payments, he defaulted on his debt, and CitiBank charged-off the debt when the balance was well below $3,000.

42) CitiBank reported the line of credit, default, and balance to Experian. However, CitiBank inaccurately reported that the current balance was $6,028 and CitiBank's inaccurate reporting was parroted in Experian's consumer report on Mr. Weathers.

43) Mr. Weathers responded to CitiBank's inaccurate reporting by repeatedly submitting disputes to Experian and, in Mr. Weathers' disputes, he repeatedly explained that "Citi's reported

balance of [ ] $6,028 is inaccurate and, if Citi continues to report this balance, Citi is wrong." Mr. Weathers' disputes also listed his telephone number and email address and repeatedly requested CitiBank and Experian to contact him to investigate his disputes.

44) Upon information and belief, Experian forwarded Mr. Weathers' repeated disputes to CitiBank, and CitiBank received Mr. Weathers' repeated disputes.

45) However, Defendants CitiBank and Experian never contacted Mr. Weathers to investigate his repeated disputes; Defendants CitiBank and Experian repeatedly failed to reasonably investigate and re-investigate Mr. Weathers' disputes; and Defendant CitiBank continues to report its inaccurate information about Mr. Weathers to Defendant Experian, which continues to include that same inaccurate information on its consumer report for Mr. Weathers.

46) Defendant CitiBank also repeatedly failed to comply with its statutory obligations by repeatedly failing to report to Defendant Experian that Defendant CitiBank's reported information about Mr. Weathers is disputed by him.

47) Defendant CitiBank's "decision to report the debt but not the dispute resulted in a much lower credit score" because "when a furnisher responds to a [credit reporting agency's] dispute verification form and relates an ongoing dispute, [the credit reporting agency] records the dispute in the credit report and does not include the derogatory information in assessing the credit score." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 146 – 150 (4th Cir. 2008). "Put simply, the failure to inform a credit reporting agency that the debtor disputed his or his debt will always have influence on the debtor, as this information will be used to determine the debtor's credit score." *Evans v. Portfolio Recovery*, 889 F.3d 337, 349 (7th Cir. 2018).

31) Also, although the FCRA, at Section 1681i(a)(1)(A), specifically provides that "if the completeness or accuracy of any item ... is disputed by the consumer ... the agency shall ... <u>record</u>

the current status of the disputed information, or delete the item" (emphasis added), Defendant Experian repeatedly failed to notate that CitiBank's reported information about Mr. Weathers is disputed by him.

Defendant Furnisher First Premier Bank & Defendant Consumer Reporting Agency TransUnion.

40) Previously, Mr. Weathers had a credit account with First Premier Bank and First Premier reported that account to TransUnion. However, First Premier inexplicably reported that this account had been "settled for less than [the] full balance" while simultaneously reporting that this same account had been "paid in full."

43) First Premier's inconsistent reporting was parroted in TransUnion's consumer report on Mr. Weathers, and Mr. Weathers responded by submitting a dispute to TransUnion. In Mr. Weathers' dispute, he specifically explained that First Premier's "reporting that [this] account was 'settled for less than [the] full balance' is directly contradicted by [First Premier's] reporting that [this same] account was 'paid in full'" and that "[b]oth [of these] reportings cannot be accurate." Mr. Weathers' dispute also listed his telephone number and email address and requested First Premier and TransUnion to contact him to investigate his dispute.

44) Upon information and belief, TransUnion forwarded Mr. Weathers' dispute to First Premier, and First Premier received Mr. Weathers' dispute.

45) However, Defendants First Premier and TransUnion never contacted Mr. Weathers to investigate his dispute; Defendants First Premier and TransUnion failed to reasonably investigate and re-investigate Mr. Weathers' dispute; and Defendant First Premier continues to report its inconsistent and necessarily inaccurate information to Defendant TransUnion, which continues to include that same inconsistent and necessarily inaccurate information on its consumer report for Mr. Weathers.

## Causes of Action.

Count One – As to Defendant CitiBank's Failure to Reasonably Investigate.

49) The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information." "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A). Whether the furnisher's investigation is reasonable is a factual inquiry.").

50) Defendant CitiBank negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information about Mr. Weathers that Defendant CitiBank itself is reporting to a consumer reporting agency.

Count Two – As to CitiBank's Failure to Note Mr. Weathers' Dispute.

51) The Fair Credit Reporting Act's Subsection 1681s–2(a)(3) is titled "Duty to Provide Notice of Dispute" and states that, "[i]f the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed [ ], the person may not furnish the information to any consumer reporting agency without notice that such information is disputed." Also, Subsection 1681s-2(b)(1)(D) states that, "[a]fter receiving notice [ ] of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall[, ] if the investigation finds that the information is incomplete [ ], report

those results."  Hence, "[i]f a consumer disputes the accuracy of credit information, the FCRA [at Subsection 1681s-2(b)(1)(D)] requires furnishers to report that fact when reporting the disputed information."  *Gorman v. Wolpoff & Abramson*, 584 F.3d 1147, 1162 (9th Cir. 2009).  Further, "after receiving notice of dispute, a furnisher's decision to continue reporting a disputed debt without any notation of the dispute presents a cognizable claim under § 1681s-2(b)." *Id*. (citing *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 150 (4th Cir. 2008)).

52)     Defendant CitiBank negligently or willfully violated Subsection 1681s-2(b)(1)(D) by negligently or willfully reporting its information about Mr. Weathers to a consumer reporting agency without notating that Mr. Weathers is disputing that information.

Count Two – As to Defendant First Premier Bank's Failure to Reasonably Investigate.

49)     The Fair Credit Reporting Act, at 15 U.S.C § 1681s-2(b)(1)(A), states, in relevant part, that, "[a]fter receiving notice ... of a dispute with regard to the [ ] accuracy of any information provided by a person to a consumer reporting agency, the person shall [ ] conduct an investigation with respect to the disputed information."  "[C]ourts have consistently concluded that § 1681s-2(b) should be read as requiring a 'reasonable' investigation." *Humphrey v. Navient Solutions*, 16 cv 370 (W.D. Wis. September 13, 2017) (string citations omitted), *rev'd on other grounds*, 759 F. App'x 484 (7th Cir. 2019) ("When a credit-reporting agency notifies a [furnisher] of a disputed debt, the [furnisher] must 'conduct an investigation with respect to the disputed information.' 15 U.S.C. § 1681s-2(b)(1)(A).  Whether the furnisher's investigation is reasonable is a factual inquiry.").

50)     Defendant First Premier negligently or willfully violated Subsection 1681s-2(b)(1)(A) by negligently or willfully failing to conduct reasonable investigations with respect to information

about Mr. Weathers that Defendant First Premier itself is reporting to a consumer reporting agency.

Count Two – As to Defendant Experian's Failure to Reasonably Reinvestigate.

46) The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

47) Defendant Experian negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct a reasonable reinvestigation into its own files' information regarding Mr. Weathers that is being reported by CitiBank.

Count Three – As to Defendant TransUnion's Failure to Reasonably Reinvestigate.

48) The Fair Credit Reporting Act, at 15 U.S.C. § 1681i(a)(1)(A), states, in relevant part, that, "if the [ ] accuracy of any [ ] information [ ] in a consumer's file at a consumer reporting agency is disputed [ ] and the consumer notifies the agency [ ] the agency shall [ ] conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate."

49) Defendant TransUnion negligently or willfully violated Subsection 1681i(a)(1)(A) by negligently or willfully failing to conduct reasonable reinvestigations into its own files' information regarding Mr. Weathers that is being reported by First Premier Bank.

## Prayer for Relief.

WHEREFORE, Plaintiff Carlton Weathers respectfully prays that this Honorable Court will hold a trial by jury and that this Court will enter judgment in his favor (and against the Defendants) for his statutory damages, his reasonable attorney's fees and costs, and for punitive damages.

Respectfully submitted,
Plaintiff Carlton Weathers' Counsel
Paúl Camarena
*/s/ Paúl Camarena*
Paúl Camarena, Esq.
540 Court St., No. 4015
Brooklyn, NY 11231
(312) 493-7494
paulcamarena@paulcamarena.com
NY Atty No: 3991981